THE PEOPLE *ex rel.* Danville, Olney & Ohio River Railroad Co.

*v.*

THE TOWN OF GRANVILLE *et al.*

*Filed at Springfield September 28, 1882.*

1. MUNICIPAL BONDS—LIMITATION—*time within which to enforce the issuing of municipal bonds voted to railroads—constitutionality of the acts in relation thereto.* The act of March 17, 1874, and that of May 29, 1877, amendatory of the former, which provide that the liability of all counties, cities, townships, towns or precincts which have voted aid, donations or subscription to the capital stock of any railroad company, should cease and determine upon and after the first day of July, 1880, and that no bonds should be issued, or stock subscribed, to any such railroad company after that date, upon account of, or upon the authority of, any previous vote, are not obnoxious to the objection that they impair the obligation of contracts. They are but statutes of limitation, prescribing and limiting the reasonable time within which the remedy for enforcing the issue of bonds to aid in the building of any railroad, previously voted, shall be pursued.

2. A town, on July 24, 1869, voted a subscription of $30,000 to a railroad, to be paid by the issue of its bonds, and the line of the road was permanently located through said town October 15, 1875, and the road constructed through the same on August 1, 1880, and on April 12, 1870, the town did subscribe to the stock of the company to the amount of $10,000, $6000 of which was paid by the issue of the bonds of the town, and on November 1, 1871, the balance of the bonds voted were deposited with a trustee, but were afterward withdrawn, by the consent of the company, in 1875, and destroyed, the supervisor and town clerk giving their obligation that the town should execute to the company bonds to the amount of $24,000 upon the completion of its road. Application was made for a *mandamus*, in 1881, to compel the issue of such

bonds: *Held*, that the case came within the express provisions of the acts of 1874 and 1877, limiting the time for the enforcement of such liabilities.

3. Such-acts apply as well to the remedy to enforce the issue of bonds on a subscription previously made, as to a proceeding to compel the subscription itself. In the case of a subscription, the remedy remains to compel the issue of bonds in payment of the same; but the statute requires this remedy to be pursued within the time limited, and if this is not done, the liability to issue the bonds ceases.

4. Prior to the passage of the act of 1874, bonds of a township, voted in aid of a railroad company, were deposited in the hands of a trustee, to be delivered to the company at a subsequent time, upon certain conditions, according to the proviso in that act. But in 1875 the bonds were given up to the town by the assent of the company, and destroyed, so that at the passage of the amendatory act of 1877, or afterward, there was no such deposit with a trustee: *Held*, that the case would not fall within the exceptions in a similar proviso in the latter act. And the fact that on the return of the bonds the supervisor and clerk of the town gave their sealed obligation to the railroad company that the town, upon the completion of the road, should execute to the company bonds to the amount of $24,000, which remained with the trustee, will not bring the case within such exception, as such obligation was but the individual one of the supervisor and clerk.

5. STATUTE—*expressing subject of bill in title.* The title to the act of 1874, to limit the time counties, etc., "shall be liable and holden to *issue aid* for the building any railroad," etc., sufficiently expresses the subject of the act which embraces *aid, donations* or *subscriptions* voted, subscription being fully covered and embraced in the word *aid* used in the title.

6. SAME—*whether special.* The acts of March 17, 1874, and May 29, 1877, limiting the time for the enforcement of corporate liability on subscriptions, etc., voted in aid of railroads, are not obnoxious to the objection of being special legislation, in enacting special limitations for the benefit of particular corporations, and applicable to a single class of municipal contracts.

This is an original proceeding, commenced in this court by the relator, against the town of Granville, C. F. Morey, supervisor, and W. H. Kibbler, clerk of said town, to compel the issue of the bonds of said town to the relator. The principal facts appear in the opinion.

Messrs. PALMERS, ROBINSON & SHUTT, for the relator:

The subscription of the town was voted by nearly an unanimous vote, at an election duly called in pursuance of

the provisions in the charter of the relator company. All the issues of fact are found in favor of the relator.

The canvassers were right in treating votes for a tax as being substantially "for subscription." *Decker* v. *Hughes,* 68 Ill. 41; *Detroit and Eel River R. R. Co.* v. *Bears,* 39 Ind. 598; *State* v. *Bissell,* 4 Greene, (Iowa,) 328.

Forms are not essential—the intention of the voters should govern. *People* v. *Hilliard,* 29 Ill. 425; *Talkington* v. *Turner,* 71 id. 236; *Clark* v. *Robinson,* 88 id. 500.

Mr. BENSON WOOD, and Mr. JAMES W. GIBSON, for the respondents:

It was incumbent upon the town officers to determine, before making the subscription and issuing the bonds, first, whether the preliminary conditions had been complied with. *Jackson County* v. *Brush,* 77 Ill. 64; *Humboldt* v. *Long,* 92 U. S. 642; *Marcy* v. *Owego,* id. 639; *Coloma* v. *Eaves,* id. 49.

The conditions of subscription and issuing bonds were made by the voters, and the town officers had no right to disregard them. *People* v. *Waynesville,* 88 Ill. 476; *Shaeffer* v. *Bonham,* 95 id. 381; *Falconer et al.* v. *B. and J. R. R. Co.* 69 N. Y. 497.

Before subscription is made, no obligation exists between the parties. *People ex rel.* v. *County of Tazewell,* 22 Ill. 156.

When the constitution of 1870 was adopted, no valid subscription having been made, the power to subscribe and to issue bonds was absolutely taken away. *Falconer* v. *B. and J. R. R. Co.* 14 N. Y. 507; *Falconer* v. *B. and J. R. R. Co.* 69 id. 491; *County of Moultrie* v. *Savings Bank,* 92 U. S. 633.

The remedy sought is barred by the act of limitation of March 17, 1874. The conditions not having been performed before that act went into effect, the relator had no vested right, and there was no obligation of contract to be impaired by that statute. *McAllister* v. *Smith,* 17 Ill. 328; *Matthias* v. *Cook,* 31 id. 33.

Municipal bonds in aid of a railroad corporation, since the constitution of 1870 went into effect, are *prima facie* invalid, and the burden of proof is upon the party affirming their validity. *Town of Prairie* v. *Lloyd,* 97 Ill. 181; *Town of Middleport* v. *Ætna Life Ins. Co.* 82 id. 563; *Jackson County* v. *Brush,* 77 id. 59.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

Various objections are made by the defendants against the granting of the prayer of the petition for a writ of *mandamus* to compel the execution and delivery to the petitioner of $24,000 of bonds of the town of Granville. Without the notice of any other of the reasons urged, we are of opinion that the acts of the General Assembly, approved March 17, 1874, in force July 1, 1874, (Rev. Stat. 1874, p. 797,) and of May 29, 1877, in force July 1, 1877, (Laws 1877, p. 157,) are ground sufficient for the denial of the writ. The first named act is entitled "An act to limit and determine the time for which counties, cities, townships, towns and precincts in this State shall be liable and holden to issue aid for the building of any railroad, in pursuance of any vote taken in conformity to the laws of this State," and enacts, "that the liability of all counties, cities, townships, towns or precincts which have voted aid, donations or subscriptions to the capital stock of or to any railroad company, in conformity to the laws of this State, for the building of, or in aid of the building of, any railroad to, into, through or near such county, city, township, town or precinct, to issue such aid voted, shall cease and determine upon and after the expiration of three years from and after the first day of July next, and no bonds shall be issued or stock subscribed to any such railroad company after such time, upon account of, or upon the authority of, such vote." The last one of the above named acts purports to be amendatory of the former, and limits the time of issuing such aid to July 1, 1880. The

vote for subscription to the stock of the relator company was given at an election held on July 24, 1869, the subscription to be paid by the issue of bonds of the township, the bonds to be payable to the company, when the line of its railroad should be permanently located through the township. The act of incorporation of the company, in pursuance of which the subscription was voted, provided, that if the vote should be for subscription, it should then be the duty of the supervisor and clerk of the township to subscribe, without unnecessary delay, upon the request of the corporation, for stock in the corporation to the amount voted for, and to issue and deliver to the corporation the same amount as the stock subscribed, of the bonds of the township.

This cause was certified from this court to the circuit court of Crawford county, for the trial of the issues of fact. Such trial was had, and resulted in numerous findings of fact, which are certified to this court. Among such findings are, that the line of the railroad was permanently located through the town of Granville, October 15, 1875; that the railroad was constructed through said township August 1, 1880; that on April 12, 1870, the town of Granville did subscribe for stock in said railroad company to the amount of $10,000. The petition for *mandamus* was filed in this court at the January term, 1881, January 25, and the summons issued February 8, 1881, returnable to the June term, 1881.

We do not see why this case does not come within the express provision of the enactment of 1877, that the liability of any township which had voted a subscription to the capital stock of any railroad company should cease and determine upon and after the first day of July, 1880, and that no bonds should be issued or stock subscribed to any such railroad company after that date, upon account of, or upon the authority of, such vote. It is answered to this, that these acts of March 17, 1874, and May 29, 1877, apply only to cases where the power to issue aid to railroad companies

rests merely in the law, and nothing has been done to vest an interest in the corporation in whose behalf the power was created; that an interest vested before the passage of the acts is not within their purview; that in the present case there had been a valid contract of subscription to the stock, made by the supervisor and town clerk, in pursuance of the vote, previous to the passage of the acts, and so the acts can have no application to the case. It is true there had been a formal subscription made of $10,000 to the stock upon the books of the company, and only $6000 of bonds ever issued, and it is contended that there was, on April 9, 1870, what was equivalent to a subscription by the supervisor and town clerk of the remaining $20,000 of the amount of $30,000 voted to be subscribed. Conceding that such subscription of stock had in fact been made, we find therein no reason for denying the applicability of the acts, or their full effect in defence against this proceeding. There is certainly nothing in the language of the acts to countenance the idea of their not applying to cases where subscriptions of stock had been made. They contain several provisos, but no one of this kind. In case of a subscription made merely without the issue of any bonds, there would remain the remedy to compel the issue of bonds in payment of the subscription. But the remedy to enforce the issuing of bonds, the statutes require to be pursued within the limited time named. If not, then the liability to issue the bonds shall cease and determine after that time, and no bonds shall be issued thereafter. We do not consider the acts obnoxious to the objection that they impair the obligation of contracts. We regard them but as statutes of limitation, prescribing and limiting the reasonable time within which the remedy for enforcing the issue of bonds to aid in the building of any railroad, previously voted, shall be pursued.

It is claimed that the case comes within one of the provisos to the act, that it is not to apply where such aid shall

have been deposited with any trustee, upon written or printed conditions, to be delivered to the railroad company at some future time. The bonds of the town, to the amount of the stock voted for, were deposited in the hands of a trustee at the time of the passage of the act of 1874, they having been so deposited on November 1, 1871; but they appear to have been withdrawn, and returned to the town and destroyed, with the assent of the railroad company, in 1875. At the time of the passage of the act of 1877, or afterward, there was no deposit of such bonds with a trustee, and the case would not come within the like proviso of that act.

After the return of said bonds to the town, the supervisor and town clerk, on August 28, 1875, executed their instrument, under seal, to the railroad company, agreeing that upon the completion of the construction of the railroad through the town of Granville, the town should execute to the railroad company a series of bonds, to the amount of $24,000. It is said by relator's counsel that this instrument was executed upon the return of the bonds to the town, as aforenamed, and of the same date, and that this instrument remains on deposit with the trustee, and so the rights of the relator are saved by said proviso. We do not find that the facts last stated appear by the record; but even if they did, they would not, we consider, bring the case within the proviso. This instrument was but the individual obligation of the supervisor and town clerk that the town, upon the contingency named, should issue its bonds, and can not be considered as the bonds or "aid" of the town deposited with a trustee, upon written or printed conditions, for their delivery at a future time.

We find nothing in the objection that, as applied to subscriptions, the act is void because the subject is not expressed in the title, that being to limit the time for which counties, etc., shall be liable and holden to *issue aid* only for the building of any railroad, etc., no mention being made of subscrip-

tions in the title.   We regard subscriptions as fully covered and embraced by the word "aid" used in the title.   Subscription to stock is one form of aid.   Nor do we consider the acts in question objectionable as special legislation, in creating, as is urged, special limitations for the benefit of particular corporations, and applicable only to a single class of municipal contracts.

The writ of *mandamus* must be refused.

*Mandamus denied.*